**DALARNE PARTNERS, LTD., on behalf of itself and all others similarly situated, Plaintiff,**

v.

**SYNC RESEARCH, INC., et al., Defendants.**

**No. SA CV 97–877AHS(EEx).**

United States District Court, C.D. California, Southern Division.

Jan. 28, 2000.

**1210**

Jeffrey H. Squire, Andrea Bierstein, Kirby IcInerney & Squire, New York City, Lionel Z. Glancy, Peter Arthur Binkow, Lionel Z. Glancy Law Offices, Los Angeles, CA, Lawrence P. Eagel, Bragar & Wexler, New York City, for Plaintiff.

Rebecca A. Mitchells, Aileen L Arrieta, Terry T. Johnson, Susan E. Bower, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Defendants.

## ORDER DISMISSING SECOND AMENDED COMPLAINT WITH PREJUDICE

STOTLER, District Judge.

### I.

#### PROCEDURAL BACKGROUND

By minute order dated February 16, 1999, the Court dismissed plaintiff's First Amended Complaint (FAC) for failure to satisfy the pleading standards set by the Private Securities Litigation Reform Act of 1995 ("PSLRA") in connection with actions brought under Section 10(b) of the Securities and Exchange Act. The order also dismissed plaintiff's claims against defendant Gregorio Reyes based on the FAC's failure to allege adequately that Reyes was actively involved in the management of the defendant corporation. Because plaintiff suggested that it had gained access to information that would further support its allegations, the Court granted plaintiff leave to file a Second Amended Complaint (SAC). On March 22, 1999, the SAC was filed.

On April 21, 1999, defendants filed their original motion to dismiss the SAC. A briefing schedule was set and both parties filed additional papers in connection with that motion. However, by minute order dated July 16, 1999, the Court vacated the hearing on defendants' motion and reset the briefing schedule in order to afford counsel the opportunity to brief the relevant issues in light of the July 2, 1999 decision issued by the Ninth Circuit Court of Appeals in *In re Silicon Graphics*, 183 F.3d 970 (9th Cir.1999), *petition for reh'g en banc denied*, 195 F.3d 521, 1999 WL 997085 (9th Cir.).

On August 2, 1999, defendants filed the instant motion to dismiss the SAC. Plaintiff filed opposition on August 6, 1999. On August 16, defendants filed their reply. The Court took defendants' motion under submission without oral argument on September 7, 1999.

Having read the parties' submissions, and having conducted independent research, the Court herewith grants defendants' motion for the reasons set forth below.

### II.

#### FACTUAL BACKGROUND

Defendant Sync develops and markets software products that enable businesses to integrate their computer networks to carrier services. (SAC ¶ 2). Plaintiff alleges that throughout the period from November 18, 1996 to March 20, 1997, defendant Sync, by and through the individual defendants, knowingly disseminated at least seven [1] optimistic but misleading

---

1. The following list identifies the subject matter of the statements, the date they were made, and the paragraphs of the SAC in which they are first discussed:

   (1) Interchange carrier partnerships, 11/18/96 (¶¶ 35–36);
   (2) International opportunities, 11/25/96 (¶ 37);
   (3) New capabilities for Tylink products, 12/9/96 (¶¶ 41);
   (4) MCI agreement, 12/10/96 (¶¶ 42);
   (5) New FrameNode product, 1/14/97 (¶ 43);
   (6) IBM/Bank of America contract, 1/29/97 (¶ 44);
   (7) Statements at technology conference, ⅔7 (¶ 48).

statements concerning its business prospects. Those statements caused the price of Sync stock to be artificially inflated to the detriment of those who bought the stock during that period, and form the predicate of plaintiff's Section 10(b) class action for securities fraud.

Plaintiff's basic theory is that the statements were false and misleading because they could not properly be understood apart from other, negative information which the defendants did not share with the investing public—information to the effect (1) that Sync's "carrier partnerships were virtually non-existent" (SAC ¶¶ 61, 72); (2) that Sync's "technology was not competitive internationally" and Sync lacked a "significant independent international market" (SAC ¶¶ 61, 72); (3) that increased competition was threatening the company's historical revenue base (SAC ¶¶ 50, 56, 61); (4) that Sync was experiencing difficulty integrating with Tylink, a new corporate acquisition (SAC ¶¶ 56, 69); and (5) that the revenue projections used by Sync management had no reasonable basis and could not be met (SAC ¶¶ 61, 63–65).

Plaintiff further contends that circumstantial evidence indicates that defendants had access to the alleged negative information and that defendants knew the challenged statements were false and misleading when made. Specifically, plaintiff alleges that defendants must have known their optimistic statements were false because (1) management received monthly reports indicating Sync's poor performance (SAC ¶ 66), (2) Sync employees communicated the relevant facts to management (SAC ¶¶ 66, 69); (3) Sync is a small company, so such information must have been readily available to management (SAC ¶ 11); (4) there was only a

short interval between Sync's last optimistic statement and the revelation that Sync's performance would fall short of expectations (SAC ¶¶ 48, 52–53); and (5) the timing of stock sales by the officers indicates that they were consciously capitalizing on the investing public's ignorance of negative information at the officers' disposal (SAC ¶¶ 12(c), 13(c), 14(c), 46, 51, 53).

Defendants argue that plaintiff's allegations fail to state a claim under Section 10(b) for a number of reasons. First, many of the statements complained of are non-actionable puffing that cannot, as a matter of law, form the predicate of fraud charges. Second, the omission of information renders a statement fraudulent only if the omitted information is closely related to the subject matter of the statement and is necessary to a proper understanding of that statement; most of the alleged negative information that plaintiff claims should have been disclosed does not relate closely to the challenged statements. Third, plaintiff improperly attempts to attribute to defendants statements made by independent market analysts. Fourth, and most importantly, under the pleading requirements of the PSLRA, plaintiff fails to allege sufficient facts to show why the challenged statements were false when made, and why there is a strong inference that defendants intended those statements to mislead. In addition, defendants renew their argument that plaintiff fails to state a claim as to defendant Reyes.

As discussed below, the Court finds that the SAC fails to satisfy the heightened pleading requirements of the PSLRA, as clarified by *Silicon Graphics*. Specifically, the Court finds that plaintiff has failed to plead facts that support a strong inference that defendants intended to deceive.[2] The

---

2. The PSLRA requires heightened particularity in pleading both the falsity of the statements complained of, and the defendant's culpable state of mind in making the statements. Because *Silicon Graphics*, the most recent and authoritative Ninth Circuit interpretation of the PSLRA, focuses on how the heightened pleading standard applies to scienter allega-

tions, this Court likewise focuses its analysis on that now-settled issue. The Court notes, however, that the "particularity" analysis provided in *Silicon Graphics* doubtlessly governs lower courts' application of the PSLRA's particularity requirement on the issue of falsity as well.

Court finds that defendants' motion should be granted on that basis. The Court does not reach the merits of defendants' remaining arguments.

## III.

### DISCUSSION

#### A. Applicable Standards

■ Civil liability based on Section 10(b) of the Securities and Exchange Act requires the plaintiff to establish scienter, and recklessness satisfies the scienter requirement only to the extent that it reflects some degree of conscious or deliberate misconduct—"a degree of recklessness that strongly suggests actual intent." *Silicon Graphics,* 183 F.3d at 979.

■ Under the PSLRA, complaints brought pursuant to Section 10(b) must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). This standard is not satisfied by allegations that would merely give rise to a reasonable inference of scienter. *See Silicon Graphics,* 183 F.3d at 985. Instead; the PSLRA's heightened pleading standard requires the plaintiff to "plead in great detail facts demonstrating . . . the required degree of intent." *Id.* In other words, for a complaint under Section 10(b) to survive a motion to dismiss, it must set forth *particularized* facts that lead to a *strong inference* that, at a minimum, the defendants acted with a degree of conscious recklessness suggesting an actual intent to deceive.

In the Ninth Circuit, the *Silicon Graphics* case provides authoritative guidance to the application of the PSLRA's two-fold "particularity" and "strong-inference" standard. In that case, the plaintiff asserted two bases for a strong inference of deliberate misconduct on the part of the officers of Silicon Graphics, Inc. ("SGI"): "(1) the existence of internal . . . reports that contradicted positive public statements made by the officers; and (2) the unusual sale of a massive amount of SGI stock by the officers." *Id.* at 984. The

Court of Appeals found that the plaintiff had alleged insufficient facts to establish the requisite "strong inference" on either ground.

With regard to the internal reports, plaintiff had specified that the defendant officers "received internal reports notifying them of serious problems with the Indigo2," a graphic design computer manufactured by SGI. *Id.* Plaintiff further detailed that the company regularly generated three kinds of reports: daily reports, monthly financial reports, and "Stop Ship" reports. *Id.* at n. 14. According to the plaintiff,

> The Flash reports, Financial Statements/Packages, and Stop Ship reports announced that (1) SGI was not shipping the Indigo2 workstation in volume; (2) North American and European sales remained slow; and (3) SGI would not meet its revenue and growth targets for FY96. [The plaintiff also contended] that the reports notified the officers that SGI was suffering 'weak North American sales due to continuing problems with its North American direct sales force' and 'a very poor Oct., with revenues, net income, and earnings per share well below forecasted and budgeted levels.'

*Id.*

The Court of Appeals for the Ninth Circuit found such allegations to be inadequate under the PSLRA. The Court underscored the deficiencies in the plaintiff's allegations in the following terms:

> Brody's complaint does not include adequate corroborating details. She does not mention, for instance, the sources of her information with respect to the reports, how she learned of the reports, who drafted them, or which officers received them. Nor does she include an adequate description of their contents which we believe—if they did exist—would include countless specifics regarding ASIC chip shortages, volume shortages, negative financial projections, and so on. We would expect that a proper complaint which purports to rely on the

existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability.

*Id.*

Having determined that the plaintiff's allegations regarding the internal reports were by themselves insufficient to ground a strong inference of scienter, the Court next considered whether the complaint, taken as a whole, stated sufficient facts to support the required inference. Accordingly, the Court considered plaintiff's allegations regarding insider trading. The Court noted that "unusual" or "suspicious" stock sales by corporate insiders may supply circumstantial evidence of scienter, but the Court stressed that "insider trading is suspicious only when it is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Id.* at 986 (internal citations omitted). The Court also noted that "among the relevant factors to consider are: (1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id.* Furthermore, the Court noted that the insider's vested stock options should be included in calculating the percentage of the insider's total holdings that had been sold. The Court went on to find that under the totality of the circumstances, the alleged sale by two insiders of 43.6 percent and 75.3 percent of their respective holdings was not sufficiently suspicious to ground a strong inference of scienter, even when viewed in light of the plaintiff's other allegations.

Taking the Ninth Circuit's treatment of the allegations made in the *Silicon Graphics* case as a guide, we now consider the allegations contained in the Second Amended Complaint in the case at bar.

### B. Analysis

As in *Silicon Graphics,* plaintiff in the instant suit seeks to ground the requisite strong inference of scienter primarily (1) on defendants' alleged access to internal reports containing information belying defendants' optimistic announcements, and (2) on suspicious stock sales by defendants during the class period. After careful review of the SAC, the Court concludes that while these allegations might suffice for a rational inference that defendants intended to deceive, the allegations lack particularity and fail to give rise to a *strong* inference of scienter.

As in *Silicon Graphics,* the SAC in the present action alleges that the defendants must have known they were making false and misleading statements because they received internal reports belying their optimistic forecasts. However, the SAC does not provide sufficient corroborating details to make the alleged reports a suitable basis for a strong inference of scienter. Plaintiff identifies only unnamed former employees as its source of information about the reports; (SAC ¶¶ 62, et seq.) such allegations are impossible to verify and present little improvement over a bald allegation that the reports exist. Further, plaintiff identifies the alleged authors of these reports only as the "seven or eight-person sales staff" at Sync, and identifies the recipients of the reports merely as "management." (SAC ¶ 66). Such general identifications are improper under *Silicon Graphics* for they would require the Court to speculate both about the extent to which each of the particular defendants in this case had access to the alleged information, and about the extent to which the alleged reports accurately reflected their authors' first-hand knowledge. Finally, plaintiff describes the contents of the alleged reports as a comparison between actual and projected sales (which indicated Sync's failure to meet revenue projections). Such a description clearly fails to satisfy *Silicon Graphics's* requirement of a detailed exposition setting forth the specific data contained in the reports, and thus containing some indicia of the reports' reliability.

The considerations adduced above make clear that plaintiff's allegations concerning internal reports are insufficiently particular and fail to ground a strong inference of scienter under *Silicon Graphics;* the remaining allegations contained in the SAC fail to cure this deficiency.

 As in *Silicon Graphics,* plaintiff in the instant case has attempted to ground an inference of scienter on the allegedly suspicious timing of stock sales by the individual defendants. This attempt fails because plaintiff nowhere pleads facts that would allow the Court accurately to assess the significance of these sales. For example, the SAC does not specify what percentage of his holdings each of the defendants sold when stock options are included in the calculation. Further, and more importantly, the SAC provides no information on the defendants' ordinary trading patterns; hence it is impossible to tell whether the challenged sales were "dramatically out of line with prior trading practices." Without knowing the particularized facts that form the context of defendants' stock sales, the Court is unable to draw from those sales a strong inference that defendants' optimistic statements were intended to deceive.

Lastly, the Court is not persuaded that plaintiff's remaining allegations (i.e., that Sync is a small company and that there was only a short interval between Sync's last positive forecast its announcement of disappointing results on March 20, 1997) give rise to a strong inference of scienter. The Court finds that any logical connection between those facts and the conclusion that the defendants knowingly deceived the investing public through their optimistic business forecasts involves a degree of speculation that is foreclosed under the PSLRA and *Silicon Graphics.*

The Court concludes that because plaintiff's SAC does not allege particularized facts that produce a strong inference of scienter, plaintiff's SAC should be dismissed. Moreover, the Court concludes that plaintiff's failure to plead particularized facts with the requisite specificity af-ter being alerted to the heightened requirements of the PSLRA and *Silicon Graphics,* justifies dismissal with prejudice.

## IV.

## CONCLUSION

For the foregoing reasons, the Court hereby dismisses the Second Amended Complaint in this action with prejudice.

IT IS SO ORDERED.