## In re LOCKHEED MARTIN CORP. SECURITIES LITIGATION

### And Related Cases

### Nos. CV 99–00372 MRP, CV 99–06171 MRP.

United States District Court, C.D. California.

July 22, 2002.

See, also, 272 F.Supp.2d 944, 2003 WL 21230619.

William S. Lerach, Darren J. Robbins, Milberg Weiss Bershad Hynes & Lerach, Alan Schulman, Bernstein Litowitz Berger & Grossmann, San Diego, CA, for Caole Kops, Barbara Zappala, Doug Perkins, Plaintiffs (99–CV–6171).

Randall J. Baron, Milberg Weiss Bershad Hynes & Learch, San Diego, CA, for Carole Kops, Plaintiff (99–CV–6171).

Jeff S. Westerman, Karen T. Rogers, Milberg Weiss Bershad Hynes & Lerach, Los Angeles, CA, for Carole Kops, Barbara Zappala, Doug Perkins, Plaintiffs(99–CV–6171).

Marc S. Henzel, Marc S. Henzel Law Offices, Bala Cynwyd, PA, for Carole Kops, Plaintiff (99–CV–6171).

Seth Alben Aronson, B. Boyd Hight, Jr., Patrick N. Downes, O'Melveny & Meyers, Los Angeles, CA, Amy J. Longo, O'Melveny & Myers, New Port Beach, CA, for Lockheed Martin Corporation, Vance D. Coffman, Marcus C. Bennett, Philip Duke, Thomas A. Corcoran, Defendants (99–CV–6171).

Defendants' Motion to Dismiss Plaintiffs' Consolidated Second Amended Class Action Complaint

PFAELZER, District Judge.

Plaintiffs bring this class action on behalf of individuals who purchased Lockheed Martin Corporation stock between August 13, 1998 and December 23, 1998 ("the Class Period"). Lockheed and six of its top officers and directors—Vance Coffman, Marcus Bennett, Norman Augustine, Vincent Marafino, James Blackwell, and Thomas Corcoran—are defendants (hereinafter "Lockheed"). Plaintiffs' claims arise under §§ 10(b) & 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5.

On October 3, 2000 this Court granted a Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint but pro-

vided leave to amend certain specified allegations. *See* Class Action Order (October 3, 2000). Plaintiffs filed their Consolidated Second Amended Complaint ("CSAC") on December 15, 2000. Defendants' second motion to dismiss was filed shortly thereafter. The Court heard oral argument on October 29, 2001 and took the matter under submission.

## TABLE OF CONTENTS

I. INTRODUCTION .............................................. 931

II. USING EVIDENCE OF INSIDER TRADING TO ESTABLISH SCIENTER: AUGUSTINE & MARAFINO .............................. 932

III. IDENTIFICATION OF SPECIFIC PERSONS OR GROUPS OF PEOPLE INVOLVED ...................................... 934

IV. THE F–16 CONTRACT WITH THE UNITED ARAB EMIRATES ............ 936

V. THE BASIS FOR PLAINTIFFS' KNOWLEDGE OF THE C–130J FORECASTS ......................................... 938

VI. SATELLITE LAUNCHES AND THE LM21 PROGRAM .................... 941

VII. STATEMENTS AND OPINIONS OF ANALYSTS ......................... 943

VIII. STATEMENTS MADE TO ANALYSTS ................................. 943

IX. EARNINGS AND GROWTH PROJECTIONS ............................ 943

X. CONCLUSION ............................................... 944

## I. INTRODUCTION

The Consolidated Second Amended Complaint must be considered in light of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). To make out a securities fraud action under the PSLRA, plaintiffs must plead both falsity and scienter for each alleged misrepresentation. *See* 15 U.S.C. § 78u–4(b). Specifically, the complaint must specify each statement alleged to have been misleading and the reasons why the statement is misleading. *See Id.* § 78u–4(b)(1)(B). If an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed. *See id.* In addition, with respect to each act or omission allegedly in violation of the title, the complaint must state, with particularity, facts giving rise to a strong inference that the defendant acted with the required state of mind. *See id.* § 78u–4(b)(2).

In the October 3, 2000 order dismissing the first Consolidated Amended Complaint (CAC), this Court provided Plaintiffs with a detailed list of particular deficiencies and granted leave to amend. In many cases, the Court indicated precisely what type of information was needed in order to cure the corresponding defects. *See, e.g.,* Class Action Order [hereinafter "Order"], at 2 ("The Court grants leave to amend these allegations to show whether Marafino or Augustine were active participants in the day to day operations of Lockheed during the class period."). Despite this guidance, the second Consolidated Amended Complaint, like the first, fails to satisfy the stringent requirements of the PSLRA.

## II. USING EVIDENCE OF INSIDER TRADING TO ESTABLISH SCIENTER: AUGUSTINE & MARAFINO

■ The Ninth Circuit has recognized that "'insider trading in suspicious amounts or at suspicious times is probative of bad faith and scienter.'" *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 987 (9th Cir.1999) (quoting *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1117 (9th Cir.1989)). Insider trading is suspicious when dramatically out of line with prior trading practices at times calculated to maximize personal benefit from undisclosed inside information. *See id.* "Among the relevant factors to consider are: (1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Id.*

In *Silicon Graphics*, the Ninth Circuit found that insider trading by the defendants in that case did not give rise to a strong inference of deliberate recklessness because all but two officers sold a relatively small portion of their total holdings,[1] and the defendants collectively retained 90 percent of their combined holdings. *See id.* The court held that the sales by the two officers who traded large portions of their individual holdings did not give rise to the necessary inference because one officer's sales represented an insignificant portion of the total allegedly suspicious sales, and the other officer was unable to trade before the class period, was not involved in the day-to-day operations of the

company, and did not make any of the allegedly misleading statements. *See id.*

In the order dismissing the first Consolidated Amended Complaint, this Court noted that the defendants collectively retained more than 80% of their combined holdings,[2] and held that Plaintiffs had not shown that defendants Marafino and Augustine—who were responsible for more than .75% of the insider sales—were active in the day-to-day operations of the company. The Court granted Defendants' motion to dismiss with respect to allegations that rely on insider trading to show scienter, but granted leave to cure the defect with respect to Marafino and Augustine by showing the required active involvement.

The facts added to the Consolidated Second Amended Complaint do not show that Marafino or Augustine were active participants in the day-to-day operations of Lockheed during the Class Period. The additional facts pertaining to Marafino and Augustine refer almost exclusively to their *pre-class period* accomplishments and affiliations with the company. *See* Consolidated Second Amended Complaint for Violation of Securities Exchange Act of 1934, at 26–27 (filed December 15, 2000) (hereinafter "CSAC"). Plaintiffs must demonstrate day-to-day involvement during the Class Period—when the insider trading allegedly took place.

By the beginning of the Class Period, both Augustine and Marafino had retired from their positions as Lockheed executive officers. The complaint states that both Augustine and Marafino served as board

---

1. The Ninth Circuit calculated "total holdings" by summing the number of exercisable options and the number of stock shares already owned. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986–87 (9th Cir. 1999). "Actual stock shares plus exercisable stock options represent the owner's trading potential more accurately than the stock shares alone." *Id.*

2. Despite the Court's finding that Defendants sold less than 20% of their combined stock, Plaintiffs continue to maintain that Defendants sold 70% of their total holdings. Inexplicably, Plaintiffs apparently still do not account for exercisable options.

members and members of the Executive Committee during the Class Period. *See id.* at 22(c),(d) and 26–27. However, identifying Augustine and Marafino as directors is not sufficient to show that these men were actively involved in Lockheed's day-to-day operations. The duties of an ordinary board member generally do not include participation in executive activities. Similarly, asserting that the men are members of Lockheed's executive committee, without describing the duties of the committee or how these defendants participated in it, does not demonstrate active involvement in day-to-day operations. Although the complaint also characterizes the men as consultants to the company,[3] it does not explain the nature of these consulting relationships or describe any of the consulting work either men allegedly performed for Lockheed.[4]

Ultimately, the complaint simply concludes that both men were actively involved in day-to-day operations during the Class Period without any relevant supporting allegations. *See id.* at 26 (initially concluding that "Defendant Augustine was actively involved in the day-to-day operations of the Company during the Class Period, much more than an ordinary director, due to his skill and knowledge of Lockheed's ongoing business and the industry," but then proceeding to exhaustively detail his pre-class period experience instead of alleging any actual active involvement during the period itself); *id.* at 27 (concluding, from an unsupported characterization of Marafino as a highly paid consultant and evidence of his pre-class period involvement with Lockheed, that "Marafino was actively involved in Lockheed's management, was in constant contact with defendants Coffman and Bennett and received the same reports and information as the other Individual Defendants" during the Class Period).[5] The fact that the man who replaced Augustine as Lockheed's Chief Executive Officer said in 1997 that he expected Augustine to continue "providing his valuable contributions to the successful pursuit of [Lockheed's] corporate objectives" neither suggests nor demonstrates actual day-to-day involvement by Augustine during the 1998 class period. *See id.* at 26. Similarly, the fact that Lockheed's 1997 Annual Report indicates that Marafino remained active as a director at that time and "regularly received information from, and provided input and advice to, Lockheed's manage-

---

**3.** The complaint characterizes Augustine as an "advisor and consultant" and identifies Marafino as a "highly paid consultant." *See* SAC at 26–27. Marafino was characterized the same way in the first Consolidated Amended Complaint. *See* Consolidated Amended Class Action Complaint, at 22 (filed December 1, 1999) (hereinafter "CAC").

**4.** The complaint states that "Marafino also performs consulting services for Lockheed in connection with the sale or merger of certain properties; serves on the boards of directors of various joint venture companies and/or subsidiaries of the company; and provides administrative and other services and advice and counsel to Lockheed's senior management." *Id.* at 19. This does not establish Marafino's active participation in Lockheed's day-to-day operations during the Class Period.

**5.** With respect to Marafino, the consolidated second amended complaint looks much like the first. The first amended complaint states:

> Defendant Marafino was much more involved in the day to day operations of Lockheed than would be the case with an ordinary corporate director because he was a retired Executive VP of Lockheed who was an active member of Lockheed's Executive Committee and a highly paid consultant to the Company. Thus, Marafino was actively involved in Lockheed's management and he was in constant contact with defendants Coffman and Bennett and he received the same reports and information as the other Individual Defendants.

CAC, at 22.

ment" is insufficient to establish day-to-day involvement during the following year—1998.[6] *See id.* at 27.

Plaintiffs have not demonstrated that defendants Augustine or Marafino were active participants in the day-to-day operations of Lockheed during the Class Period. Therefore, the motion to dismiss is GRANTED with respect to allegations relying on insider trading to establish scienter. Leave to amend the complaint is granted for the limited purpose of allowing Plaintiffs to allege how the executive committee was involved in Lockheed's day-to-day operations during the class period, if at all, and how the defendants Augustine and Marafino each participated in any such involvement.

## III. IDENTIFICATION OF SPECIFIC PERSONS OR GROUPS OF PEOPLE INVOLVED

██ In the October 3, 2000 order, this Court granted the defendants' motion to dismiss allegations based on a telephonic conference call vaguely alleged to have been made by "defendants" on September 21, 1998. The Court held that "Plaintiffs may not level allegations indiscriminately against 'defendants' and still satisfy the stringent pleading requirements of the PSLRA." Class Action Order, at 3. The Court granted "leave to amend to identify the specific persons or group of people involved." *Id.*

Although the Consolidated Second Amended Complaint still contains the general allegation that "defendants held a telephonic conference call" on September 21, 1998, it also specifically identifies defendant Bennett as participating in the call and attributes certain allegedly misleading statements to him. *See* CSAC, at 55. Thus, the Consolidated Second Amended Complaint cures the particular pleading defect specifically identified by the Court. Elsewhere, however, the complaint still levels indiscriminate allegations against defendants despite the countervailing principle enunciated by the Court. The complaint never alleges that Augustine, Marafino, Corcoran, or Blackwell individually made any false or misleading statements.[7] Rather, it attributes allegedly false or misleading statements to these defendants through the group-published information doctrine. *See* CSAC, at 22. According to Ninth Circuit case law that pre-dates the PSLRA:

In cases of corporate fraud where the false or misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are the collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1440 (9th Cir.1987) (citations omitted). Here, Plaintiffs' indiscriminately attribute allegedly false or misleading statements in Lockheed press releases to all named defendants. Defendants claim that group pleading is no longer permissible under the PSLRA.

---

**6.** Although these two facts may be relevant to the inquiry, any such relevance is highly attenuated because it assumes that the 1997 activities constitute day-to-day involvement with Lockheed. Moreover, it requires one to infer that the professional activities of Marafino did not generally change from year to year.

**7.** Only Coffman and Bennett are alleged to have made false or misleading statements on an individual basis.

No circuit court of appeals has decided whether the group-published information doctrine has survived the enactment of the PSLRA, and district courts are split over the issue. *Compare In re Secure Computing Corp.*, 184 F.Supp.2d 980, 991 (N.D.Cal.2001) (reaffirming its finding that the group published information presumption survives the PSLRA) *with Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1350–51 (S.D.Cal.1998) (ruling that the PSLRA is fundamentally inconsistent with the group published information doctrine).

In *Allison v. Brooktree Corp.*, the Court apparently found that the group-published information doctrine is inconsistent with the PSLRA because the doctrine allows facts to be presumed while "the PSLRA specifically requires that the untrue statements or omissions be set forth with particularity as to 'the defendant.'" *Allison*, 999 F.Supp. at 1350. Other courts have ruled that the doctrine is no longer applicable because it is inconsistent with the PSLRA's requirement that scienter must be pleaded with particularity for each defendant. *See Coates v. Heartland Wireless Communications, Inc.*, 26 F.Supp.2d 910, 916 (N.D.Tex.1998) ("It is nonsensical to require that a plaintiff specifically allege facts regarding scienter as to each defendant, but to allow him to rely on group pleading in asserting that the defendant made the statement or omission."). It has also been suggested that the group-published information doctrine is no longer viable because it is inconsistent with the overall spirit of the PSLRA in general, and the PSLRA's discovery stay provision at § 78u–4(b)(3)(B) in particular. Group pleading arguably allows plaintiffs to name, as defendants, people who cannot be tied by specific facts to allegedly false or misleading statements without discovery. However, "Congress clearly intended that complaints in [post-PSLRA] securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *Medhekar v. United States Dist. Court*, 99 F.3d 325, 328 (9th Cir.1996).

Courts favoring the continued application of the group-published information doctrine offer only modest support for their positions. Some courts simply point out that the doctrine has nothing to do with scienter and reaffirm the reasonableness of the doctrine's underlying presumption. *See BankAmerica Corp. Secs. Litig.*, 78 F.Supp.2d 976, 988 (E.D.Mo.1999) ("[T]he doctrine has nothing to do with scienter. Rather, it is a reasonable presumption that the contents of company-published documents and press releases are attributable to officers and directors with inside knowledge of and involvement in the day-to-day affairs of the company."). At least one court in the Ninth Circuit partially based its decision to continue recognizing group pleading on the fact that the Ninth Circuit's opinion in *Silicon Graphics* fails to question the enduring viability of the doctrine. *See In re Stratosphere Corp. Sec. Litig.*, 1 F.Supp.2d 1096, 1108 (D.Nev.1998) (citing the defendant's failure to offer case authority for the doctrine's abolition as a second reason for its decision). Other courts have adhered to the doctrine simply because the appellate court for their circuit has not yet addressed the question. *See, e.g., Danis v. USN Communications, Inc.*, 73 F.Supp.2d 923, 939 (N.D.Ill.1999) ("Until receiving clarification from the Seventh Circuit, this court is unwilling to read the PSLRA as abolishing all remnants of notice pleading and the liberal standards under which motions to dismiss are viewed."). Courts that still apply the group-published information doctrine have not explicitly addressed the better arguments against its continued recognition in the post-PSLRA securities fraud context.

The group-published information doctrine is inconsistent with the PSLRA because it requires courts to accept a plaintiff's belief regarding the individual liability of a corporate officer even when the belief is based on the officer's job title alone. The doctrine is essentially a mechanism for pleading an officer's involvement in the issuance of a corporate statement based on information and belief. The PSLRA permits pleading on information and belief, but only if the complaint states with particularity all facts on which the belief is formed. *See* 15 U.S.C. § 78u–4(b)(1). Implicit in this requirement is a mandate that the stated facts provide an adequate basis for the asserted belief. Thus, a plaintiff can attribute to a particular defendant a false or misleading statement contained in a group-published document based on information and belief as long as the plaintiff satisfies the corresponding PSLRA requirements.

For instance, if the alleged misleading statement appears in a press release issued by a company discussing financial performance, a plaintiff could plead on information and belief that the chief financial officer is responsible for making the statement if the plaintiff can plead with specificity why the officer's position directly involves such duties or why a specific corporate policy requires that chief financial officer make such releases.

*Coates,* 26 F.Supp.2d at 916 n. 2 (holding that "[b]ecause a plaintiff can plead on the basis of information and belief, he need not rely on group pleading."). Under no circumstances does the group-published information doctrine relieve plaintiffs of their burden to plead scienter under subparagraph 2 of the Act. *See* 15 U.S.C. § 78u–4(b)(2).

■ In order to satisfy the stringent pleading requirements of the PSLRA, a complaint seeking to attribute information published by an organization to an individual defendant should state, with particularity, facts indicating that the individual defendant was directly involved in the preparation of the allegedly misleading statements.

■ Here, the Consolidated Second Amended Complaint seeks to attribute statements appearing in Lockheed press releases to individual defendants Augustine, Marafino, Corcoran, and Blackwell. However, it does not even allege facts to show that Augustine and Marafino were active participants in Lockheed's day-to-day operations during the class period, *see supra* Section I, much less demonstrate that they were directly involved in the preparation of the allegedly misleading statements. Nor does it contain facts suggesting that defendants Corcoran and Blackwell were in any measure responsible for the statements in their capacities as Vice Presidents of Lockheed or their capacities as Chief Operating Officers of Lockheed's Space & Strategic Missiles Sector and Lockheed's Aeronautics Sector respectively. Therefore, Plaintiffs fail to demonstrate that defendants Augustine, Marafino, Corcoran, and Blackwell made any allegedly false or misleading statements. The motion to dismiss these defendants is GRANTED. Plaintiffs are granted leave to amend the complaint once more to include facts indicating that Augustine, Marafino, Corcoran, and Blackwell were directly involved in the preparation of the allegedly misleading statements.

## IV. THE F–16 CONTRACT WITH THE UNITED ARAB EMIRATES

■ In the order dismissing the first Consolidated Amended Complaint, this Court found that Plaintiffs failed to show why the August 1998 statement that Lock-

heed was expecting to successfully conclude negotiations with United Arab Emirates (U.A.E.) for the purchase of 80 F–16 aircraft in 1998 was misleading, and granted leave to amend.

In the Consolidated Second Amended Complaint, Plaintiffs allege that the statements were misleading because it was unlikely that the contract could be signed within five months. Plaintiffs allege that the UAE demanded new technologies in the F–16s, including advanced electronic warfare systems with full software codes, which the United States had not previously allowed to be released.[8] Plaintiffs also allege that the United States was not yet using these technologies and was therefore reluctant to release them. Finally, Plaintiffs allege that any final contract with the U.A.E. would require at least an additional six to eight months for Pentagon and Congressional approval. Thus, Plaintiffs have pled facts indicating that the statement regarding Lockheed's UAE contract expectations was misleading.

Although Plaintiffs have adequately pled that the statements are misleading, they have not demonstrated that Defendants actually knew that the statements were misleading when made. The statements are forward-looking[9] and therefore fall within the PSLRA's safe harbor provision.[10] Because they appear to be material and they were not expressly identified as forward-looking, the statements fall under the section of safe-harbor provision requiring plaintiffs to demonstrate that defendants actually knew that the forward-looking statements were false when they were made. *See id.* Plaintiffs must plead facts sufficient to establish such knowledge in order to survive a motion to dismiss. *See In re Splash Tech. Holdings Secs. Litig.,* 160 F.Supp.2d 1059, 1069 (N.D.Cal.2001) ("To the extent that they rely upon allegations of false forward-looking statements, therefore, plaintiffs must plead, 'in great detail,' 'all the facts' forming the basis for their belief that defendants made the forward-looking statements with actual knowledge that they were false."); *Pegasus Holdings v. Veterinary Ctrs. of Am., Inc.,* 38 F.Supp.2d 1158, 1161 (C.D.Cal. 1998).

Plaintiffs have not pled facts indicating that Defendants actually knew that the United States previously refused to allow the export of certain technologies found in the F–16s, that the United States was not yet using the technologies, or that it would take at least six to eight months to get approval from Pentagon and Congress. Thus, the pleadings do not show that Defendants were actually aware of the factors that allegedly render their statements misleading. Nor do the pleadings otherwise demonstrate that Defendants actually knew that Lockheed would be unable to

---

**8.** Plaintiffs allege that the Pentagon previously refused to allow Boeing to sell F–15s with the same technologies to Saudi Arabia and Egypt.

**9.** Forward-looking statements include statements (i) containing a projection of revenues, income, earnings per share, capital expenditures, dividends, capital structure, or other financial items; (ii) regarding the plans and objectives of management for future operations; or (iii) concerning future economic performance. *See* 15 U.S.C. § 78u–5(i)(1).

**10.** The PSLRA contains a safe harbor provision for forward-looking statements. In general, it limits liability for false or misleading forward-looking statements if the statements are identified as forward-looking and accompanied by certain cautionary language, if the statements are immaterial, or if the entity making the statements did not actually know the statements were false when made. *See* 15 U.S.C. § 78u–5(c)(1). It is the plaintiff who bears the burden of proving, if necessary, that the defendant actually knew that the forward-looking statement was knowingly false when made. *Id.*

sign a contract with the U.A.E. before the end of 1998.

The motion to dismiss is GRANTED with respect to allegations regarding the F–16 contract. However, Plaintiffs are granted leave to amend the complaint to show that the Defendants actually knew that the allegedly misleading statements were false when made.

## V. THE BASIS FOR PLAINTIFFS' KNOWLEDGE OF THE C–130J FORECASTS

In dismissing the Consolidated Amended Complaint, this Court held that Plaintiffs failed to disclose the basis for their knowledge regarding the forecast of C–130J deliveries to the Air Force and granted leave to amend to "(1) demonstrate that the information about the Air Force and deliveries was public or (2) state how [Plaintiffs] obtained the information." Order, at 4.

The Consolidated Second Amended Complaint identifies, as sources, specific publicly-available government reports and documents[11] including an April 1998 GAO Report, a GAO letter to Senator John McCain, a C–180J Modernization booklet prepared by the United States Air Force (USAF), a USAF staff summary sheet, a letter to the GAO from Colonel Siegal, and a USAF Talking Paper for SAS/OS–C–130 Modernization Update. *See* Opposition at 8 n. 8 (providing citations to the complaint). The complaint also identifies other public information[12] and specifically identifies Lieutenant Colonel Travis Allen, Jr., the United States Air Force C–130J procurement manager, as a source of non-public information. *See id.*

In addition to resting on public information and a specifically identified party, the Consolidated Second Amended Complaint relies in part on certain unnamed individuals. Paragraph 44 of the complaint alleges that, "according to a former Lockheed test flight engineer (who worked on the C–130J program throughout 1998) Lockheed was still, in late 1998, flight testing various models of the C–130J." In paragraph 45, the complaint states that "according to a former Lockheed flight engineer, it was well publicized in a company-wide email during mid–1998 that Lockheed would not begin to realize any profit on the C–130J aircraft program until the Company sold at least 115 aircraft." At paragraph 47, Plaintiffs allege that "[a]ccording to a former flight engineer and

---

**11.** Defendants allege that publicly available information cannot provide a basis for a misrepresentation claim, citing *Basic v. Levinson* for the proposition that stock prices on well-developed markets automatically reflect such information. *See* Motion at 13. If the market price reflects the truth then "[t]he basis for finding that the fraud had been transmitted through market price would be gone." *Basic v. Levinson,* 485 U.S. 224, 249, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). However, whether or not the market price reflects corrective information disseminated after public misrepresentations were allegedly made is a question of fact. *Basic,* 485 U.S. at 249, 108 S.Ct. 978 (suggesting that a securities fraud claim may be defeated if defendants can show that the truth "credibly entered the market and dissipated the effects of the misstatements" because "those who traded ... shares after the

corrective statements would have no direct or indirect connection with the fraud"). Defendants cannot prevail on a factual defense at this stage because they are unable to offer evidence in connection with the motion to dismiss. *See Branch v. Tunnell,* 14 F.3d 449, 453 (9th Cir.1994) ("Generally, a district court may not consider any material beyond the pleadings when considering a motion to dismiss."). "[T]he truth on the market defense presented by the defendants necessarily involves a fact-intensive inquiry which is ill-suited to a motion to dismiss." *Schaffer v. Timberland Co.,* 924 F.Supp. 1298, 1309 (D.N.H.1996).

**12.** The complaint states that Gene Elmore, a C–130J line manager at Marietta, has publicly acknowledged certain facts. *See* CSAC, ¶ 41 (p. 28).

former Lockheed employees at the Marietta plant, the number of foreign orders ... contradicted defendants' public statements." Finally, paragraphs 51–52 of the complaint allege that, according to a 16–year former employee who worked in Production Control at the C–130J manufacturing plant in Marietta until January 2000 and who interfaced with the Procurement and Manufacturing department to ensure that the correct parts for the manufacture of C–130J were available when needed, production at the Marietta plant had slowed down to such an extent by mid–1998 that employees would do little more than "show up and eat." According to this same 16–year employee, Lockheed's MIMS and AIMS inventory systems reflect the slowing in the C–130J program.

The Ninth Circuit has yet to address whether a plaintiff may use anonymous sources to support allegations in a complaint governed by the PSLRA. However, the Court of Appeals for the Second Circuit has held that the PSLRA can be satisfied "without requiring plaintiffs to name their confidential sources as long as they supply sufficient specific facts to support their allegations." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir.2000).

> [W]here plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false. Moreover, even if personal sources must be identified, there is no requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged.

*Id.* at 314. The *Novak* court found that "[i]mposing a general requirement of disclosure of confidential sources serves no legitimate pleading purpose while it could deter informants from providing critical information to investigators in meritorious cases or invite retaliation against them." *Id.*

Several district courts outside of the Second Circuit have found the *Novak* decision persuasive. *See, e.g., In re McKesson HBOC, Inc. Secs. Litig.*, 126 F.Supp.2d 1248, 1271 (N.D.Cal.2000) (agreeing with the analysis in *Novak* and finding "no conflict with the Ninth Circuit's opinion in *Silicon Graphics*," because *Silicon Graphics* "did not even address [the] issue" [13]); *Fitzer v. Security Dynamics Techs., Inc.*, 119 F.Supp.2d 12, 20 (D.Mass.2000) (stating that the court was "inclined to agree" with the Second Circuit's decision in *Novak* and expressly adopting its holding). *But see In re Green Tree Financial Corp. Stock Litig.*, 61 F.Supp.2d 860, 871–72 (D.Minn.1999) (holding that plaintiffs' allegation that a defendant made certain admissions to a money manager failed for want of particularity because "[t]he source of such a statement obviously is a central fact ... on which plaintiffs' belief [was] formed" and yet the money manager was never named); *Dalarne Partners, Ltd. v. Sync Research, Inc.*, 103 F.Supp.2d 1209, 1213 (C.D.Cal.2000) (noting that allegations based on reports described by unnamed, former employee sources "are impossible to verify and present little improvement over a bald allegation that the reports exist").

There appears to be little support for the proposition that plaintiffs must always disclose the names of human sources in order to satisfy the PSLRA's pleading re-

---

**13.** The District Court in *Silicon Graphics* required the naming of sources but the Ninth Circuit did not address the issue on appeal.

See *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F.Supp.2d 1248, 1271 (N.D.Cal.2000).

quirements. The language of the PSLRA does not expressly prohibit pleadings based on anonymous sources, and such a prohibition cannot reasonably be implied from the legislative history.[14] Moreover, *Silicon Graphics* does not require plaintiffs to disclose the names of all their sources. Rather, it requires plaintiffs to plead "corroborating details" when allegations are based on non-public information. *See In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d at 985. "It is possible to identify sources and provide other corroborating details without disclosing the names of [the] sources." *In re McKesson HBOC, Inc. Secs. Litig.*, 126 F.Supp.2d at 1271.

■ This Court adopts the Second Circuit standard enunciated in *Novak*. A plaintiff may use an anonymous source to support allegations in a complaint governed by the PSLRA provided the source is described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged. *See Novak*, 216 F.3d at 314. This pleading guideline should not be construed as an invitation to describe a generic person at the pleading stage and then go fishing for a party that actually "fits the bill" during discovery. *Silicon Graphics* unambiguously rejects such an approach. *See In re Silicon Graphics Inc. Secs. Litig.*, 183 F.3d at 985 ("It is not sufficient for a plaintiff's pleadings to set forth a belief that certain unspecified sources will reveal, after appropriate discovery, facts that will validate her claim."). The standard articulated above applies only when the plaintiff has already received the information from the referenced source. The plaintiff must describe a specific person, not just the job title of someone likely to have the desired information.

■ The plaintiffs have described the test flight engineer referred to in ¶ 44, the

---

14. The court that tried *Silicon Graphics* found anonymous sources impermissible based on certain excerpts from the legislative history of the PSLRA. Specifically, the court focused on Representatives Bryant and Dingell, who argued against requiring plaintiffs to disclose all the facts on which their beliefs were formed. In support of his proposed amendment, Representative Bryant cautioned that, in order to comply with such a requirement, " 'any whistle-blower within a securities firm involved would have to be uncovered in the pleadings in the very, very beginning.' " *In re Silicon Graphics, Inc. Secs. Litig.*, 970 F.Supp. 746, 763 (N.D.Cal.1997) (quoting 141 Cong. Rec. H2848 (Mar. 8, 1995)). "Representative Dingell agreed, noting that 'you must literally, in your pleadings, include the names of confidential informants, employees, competitors, Government employees, members of the media, and others who have provided information leading to the filing of the case.' " *Id.* (quoting 141 Cong. Rec. H2849 (Mar. 8, 1995)).

The district court in *Silicon Graphics* concluded that "[b]ecause 'Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language,' ... plaintiffs must plead the sort of information described by Reps. Bryant and Dingell to meet the requirements of the SRA as enacted." *Id.* at 764 (quoting *Immigration & Naturalization Serv. v. Cardoza–Fonseca*, 480 U.S. 421, 442–43, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (internal quotation marks and citations omitted)). This conclusion assumes that the concerns of Representatives Bryant and Dingell were well-founded and that their interpretation of the legislation accurately reflects congressional intent. However, Congress may not have agreed that the unamended bill required the disclosure of personal sources in every instance. Indeed, it may have rejected Representative Bryant's proposed amendment because it was unnecessary. In any case, a court should approach the characterizations of a statute by those who are opposed to it with caution. *See Novak v. Kasaks*, 216 F.3d 300, 313 (2d Cir. 2000) (disapproving of the trial court's holding in *Silicon Graphics* because the court "relied primarily on hyperbolic statements of legislators attempting ... to amend the proposed Act to lighten plaintiffs' pleading burden.").

flight engineer referred to in ¶ 45, and the anonymous 16–year employee referred to in ¶¶ 51–52 with sufficient particularity under the *Novak* standard. The information provided by the anonymous test flight engineer who worked on the C–130J program throughout 1998 concerns flight testing of C–130J aircraft during the same year. The information from the anonymous flight engineer regards an email that was allegedly distributed "company-wide" and therefore, by definition, to the anonymous flight engineer. Finally, the information provided by the anonymous 16–year employee who worked in Production Control at the C–130J manufacturing plant in Marietta and who interfaced with the Procurement and Manufacturing department concerns C–130J production activities. It appears that Plaintiffs have found specific individuals who were in positions to gain personal knowledge regarding the facts attributed to them. Disclosing the names of the sources at this stage is unnecessary.

Conversely, the generic reference to anonymous "engineers" and "Lockheed employees" in paragraph 47, does not satisfy the *Novak* standard because it is unaccompanied by further detail. In addition, the complaint fails to identify any source for statements by John Parrish, director of business development for air mobility programs, to "military personnel." *See* CSAC, ¶ 45 (p. 30), and fails to either identify the source of information regarding Bill Bullock's briefing of Senators Ted Stevens and Paul Coverdell or allege that the information about the briefing is public. *See* CSAC, ¶ 47 (p. 31). Thus, Plaintiffs have not disclosed how they obtained this information.

In any case, Plaintiffs must do more than just demonstrate that the information about the Air Force and deliveries was public or state how Plaintiffs obtained the information found in the complaint. Like the statements regarding the F–16 contract with the United Arab Emirates, the statements regarding the C–130J forecasts are forward-looking and therefore fall within the PSLRA's safe harbor provision.[15] Plaintiffs have not pled facts suggesting that Defendants actually knew that the forward-looking statements regarding the C–130J program were false or misleading when they were made.

The Consolidated Second Amended Complaint does not allege sufficient corroborating details in connection with certain non-public information regarding the C–130J forecasts, and does not disclose the basis for Plaintiffs' knowledge regarding other information supporting the C–130J allegations. Moreover, the information itself does not suggest that Defendants actually knew that their statements were false or misleading when made. The motion to dismiss is therefore GRANTED with respect to the C–130J allegations. However the Court grants Plaintiffs leave to amend the complaint as follows: (1) to demonstrate that the anonymous "engineers" and "Lockheed employees" described in paragraph 47 of the second Consolidated Amended Complaint were in positions to gain personal knowledge regarding the facts attributed to them, (2) to disclose the basis for Plaintiffs' knowledge regarding the statements by John Parrish and the briefing by Bill Bullock, and (3) to plead facts indicating that Defendants actually knew that the statements regarding the C–130J program were false or misleading when made.

## VI. SATELLITE LAUNCHES AND THE LM21 PROGRAM

In the order dismissing the first Consolidated Amended Complaint, this Court found that Plaintiffs "alleged no cor-

---

**15.** *See supra* notes 9 & 10.

roborating details to show that the statements regarding the [satellite] launches or [the] LM21 [program] were false or misleading" and granted leave to amend. Order, at 5. Plaintiffs have omitted allegations regarding the LM21 program from the Consolidated Second Amended Complaint, but have repled allegations regarding the satellite launches.

According to Plaintiffs, the statement that Lockheed's Titan IV launch failure on August 12, 1998 would not impact earnings is false or misleading because Lockheed was likely to forfeit up to $30 million in government awards for successful launches. See CSAC, at ¶ 77(j) (p. 54). However, Plaintiffs have not alleged how Lockheed's failure to collect such awards would impact earnings.[16] Nor have Plaintiffs shown that those responsible for making these forward-looking statements actually knew or believed, when the statements were made, that Lockheed would forfeit such a sum and that such forfeiture would impact earnings. Thus, Plaintiffs have not shown that the statements concerning the launch failure were false or misleading, and have failed to adequately plead scienter.

██ Plaintiffs also allege that statements regarding the delay of certain satellite launches were false and misleading because Lockheed stated (1) that the delays were due to "launch pad constraints" and (2) that the satellites would be launched during the fourth quarter of 1998. See CSAC, ¶ 85 (p. 59). Plaintiffs allege that the delays were caused by Lockheed's inability to finish manufacturing the satellites due to management problems and defective parts, and that the

satellites could not be launched during the fourth quarter of 1998 due to launch pad constraints. See CSAC, ¶ 92(j) (p. 66). In this regard, Plaintiffs allegations are nearly identical to those offered in the previously dismissed complaint. The first Consolidated Amended Complaint states:

(f) Virtually all of the Proton Satellite launches scheduled for the 2ndH 1998 would be delayed, not due to launch pad constraints, but rather, due to Lockheed's inability to successfully complete the manufacture of the needed satellites as a result of defective parts provided by a supplier. Due to launch pad constraints, however, those lost launches would likely not be able to be made up during 1999(sic).

CAC, ¶ 60(f) (p. 49). The second Consolidated Amended Complaint states:

(j) Lockheed could not conduct the satellite launches planned for 1998 because of Lockheed's inability to successfully complete the manufacture of the needed satellites. Manufacturing delays were due to management problems and defective parts provided by a supplier. Also, due to launch pad constraints, the earlier "missed" or lost launches could not be made up in 1998.

CSAC, ¶ 92(j) (p. 66).[17] The reference to "management problems" in the Consolidated Second Amended Complaint is not a corroborating detail that shows why the statements regarding the launches were false or misleading. The reference is simply another generality that also requires corroborating detail. Since this aspect of the complaint remains virtually unchanged,

---

**16.** For example, Plaintiffs could allege how such awards are used to compute Lockheed's earnings.

**17.** The Consolidated Second Amended Complaint also contains allegations that Lock-

heed's satellite operations could not justify claims of future growth because it was hemorrhaging money. However, the complaint does not allege that defendants claimed future growth would be attributable to satellite operations.

it is necessarily just as deficient as the original.

The Consolidated Second Amended Complaint alleges that the satellite launch problems were exacerbated by the fact that President Clinton capped the total annual number of Proton Rocket launches and the fact that satellite licensing alone could take an additional six months. These facts appear to be new to the Consolidated Second Amended Complaint. However, like the reference to "management problems," the facts do not constitute corroborating details. Plaintiffs fail to allege how the annual cap on launches or the potential licensing delays render defendant's statements false or misleading.

Finally, Plaintiffs fail to allege "any facts showing that defendants knew at any time that their disclosed expectations concerning the satellite launches were inaccurate, that any "parts problems" could not be solved in time to meet these expectations, or that launch pad constraints were not the true cause of the delays." Motion at 20. Plaintiffs have again failed to allege corroborating details to show that the statements regarding the satellite launches were false or misleading, and have failed to establish scienter. The motion to dismiss is therefore GRANTED with respect to the satellite launches. Leave to amend is denied.

## VII. STATEMENTS AND OPINIONS OF ANALYSTS

In the October order dismissing the first Consolidated Amended Complaint, this Court dismissed allegations based exclusively on statements and opinions made by analysts because Plaintiffs failed to show that Lockheed expressly or impliedly endorsed or approved the statements. *See* Order, at 5 (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir.1996)). The Court granted leave to amend these allegations. However, Plaintiffs do not appear to rely on such statements or opinions in the Consolidated Second Amended Complaint and Defendants have not moved to dismiss on the basis that any such statements lack evidence of approval or endorsement by Lockheed. Thus, statements made by analysts no longer appear to be at issue.

## VIII. STATEMENTS MADE TO ANALYSTS

▮ Although Defendants may not be held liable for statements made *by* analysts to the public unless Defendants' approval or endorsement of such statements is shown, Defendants may be held liable for any misleading statements they made *to* analysts regardless of whether Defendants endorsed or approved any resulting reports. *See* Order, at 5 (citing *Warshaw v. Xoma Corp.*, 74 F.3d 955, 959 (9th Cir. 1996)). In its prior order, the Court found that all but two of the analyst reports in the Consolidated Amended Complaint were based on statements made by Defendants. The two exceptions were reports by analysts Cai Von Rumohr and Howard Rubel regarding allegations that Lockheed "boosted" its third quarter financials in 1998. The Court granted leave to amend with respect to these allegations.

Plaintiffs do not allege in the Second Consolidated Amended Complaint that Defendants are liable for the reports of Von Rumohr and Rubel, or that such reports were false or misleading in any way. The new complaint appears to reference the reports only in the context of providing factual background for other allegations.

## IX. EARNINGS AND GROWTH PROJECTIONS

▮ Plaintiffs allege that earnings and growth projections made by Defendants were false or misleading because Defendants knew that Lockheed would not be

able to meet the projections unless it signed the F–16 contract, delivered the C–130Js, and resumed satellite launches in accordance with its other allegedly misleading statements. *See* SCAC, at ¶ 58 (p. 37). However, Plaintiffs have not pled facts indicating how or why Lockheed would be unable to meet the projections absent such circumstances. Thus Plaintiffs have not adequately alleged that the earnings and growth projections were false or misleading.

Moreover, the earnings and growth projections are forward-looking statements and are therefore entitled to the protection afforded by the PSLRA's safe-harbor provision. Lockheed claims that the earnings and growth projections were clearly identified as forward-looking statements and were accompanied by cautionary disclosures. Plaintiffs do not dispute this. Nor do the plaintiffs contend that the cautionary language is not meaningful or otherwise fails to trigger the safe-harbor provision. *See* 15 U.S.C. § 78u–5(c)(1) ("[A] person ... shall not be liable with respect to any forward-looking statement ... if and to the extent that ... the forward-looking statement is ... identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement ...."). Therefore, Plaintiffs claims regarding earnings and growth projections cannot survive the motion to dismiss.[18] *See* 15 U.S.C. § 78u–5(e) ("On any motion to dismiss based upon subsection (c)(1), the court shall consider any statement cited in the complaint and any cautionary statement accompanying the for-

ward-looking statement, which are not subject to material dispute, cited by the defendant.").

The motion to dismiss is GRANTED with respect to the claims arising from Lockheed's earnings and growth projections. Leave to amend in accordance with this order is granted.

## X. CONCLUSION

Plaintiffs have failed to cure many of the pleading defects identified by the Court in its October 2000 order. Moreover, there are several additional pleading issues that must be addressed before the case can proceed. Plaintiffs have twenty (20) days from the date of this order to amend as authorized herein. Because the motion to dismiss is granted, The Motion to Strike Portions of Plaintiffs' Consolidated Second Amended Class Action Complaint is moot.

IT IS SO ORDERED.

---

18. Plaintiffs claims fail even if the forward-looking statements are not accompanied by "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" because Plaintiffs do not plead facts suggesting that the defendants knew that the earnings and growth projections were false when made.