## In re REAL ESTATE ASSOCIATES LIMITED PARTNERSHIP LITIGATION.

### No. CV 98–7035DDPAJWx.

United States District Court,
C.D. California.

Aug. 29, 2002.

Lawrence A. Sucharow, Joseph Sternberg, Christopher J. Keller, Goodkind Labaton Rudoff & Sucharow, New York City, Nicholas E. Chimicles, Candice L.H. Hegedus, Chimicles & Tikellis, Haverford, PA, Lionel Z. Glancy, Peter Arthur Binkow, Glancy & Binkow, Los Angeles, CA, Leigh R. Lasky, Lasky & Rifkind, Chicago, IL, for plaintiffs.

Matthew P. Kanny, Mark Everett Goldman, Manatt Phelps & Phillips, Los Angels, CA, Jack P, DiCanio, Proskauer Rose, Los Angeles, CA, Robert J.A. Zito, Caryn L. Marcus, Ruth Haber, Beth Fischbein, Kenneth G. Schwarz, Stefanie Gatti, Fischbein Badillo Wagner & Harding, New York City, for National Partnership Investments Corp., Alan I. Casden, Charles H. Boxenbaum, Bruce E. Nelson, Henry C. Casden, National Partnership Investments Ass'n, I & II, Real Estate Associates Ltd. I through VII, defendants.

Matthew P. Kanny, Manatt Phelps & Phillips, Los Angeles, CA, Kenneth G. Schwarz, Fischbein Badillo Wagner & Harding, New York City, for Housing Programs Ltd., defendant.

## ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

PREGERSON, District Judge.

This matter comes before the Court on the defendants' motion for judgment on the pleadings dismissing the Corrected Second Restated, Amended and Supplemental Complaint (the "CSRASC") pursuant to Federal Rules of Civil Procedure 12(c) and 9(b), and the Private Securities Litigation Reform Act of 1995 (the "Reform Act" or the "PSLRA"). After reviewing and considering the materials submitted by the parties, and hearing oral argument, the Court adopts the following order.

### I. Background

Please see the Court's Order Denying the Defendants' Motion for Summary Judgment for a detailed background of this action.

## II. Discussion

### A. *Legal Standard*

Judgment on the pleadings is properly granted when, taking all the allegations as true, the moving party is entitled to judgment as a matter of law. *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir.1999).

### B. *Analysis*

#### 1. *Compliance with Court's July 20, 2001 Order*

The defendants assert that the plaintiffs have failed to comply with the Court's prior Order by failing to reduce the length of their complaint. The CSRASC contains 138 pages, plus a 19–page glossary of terms, compared to the SAC which was 174 pages in length. The defendants object to the CSRASC the grounds that it violates Federal Rule of Civil Procedure 8, which states that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2), and that directs that "[e]ach averment of a pleading shall be simple, concise, and direct," Rule 8(e)(1). Further, the CSRASC names eight new defendants. Finally, the defendants charge that the CSRASC fails to associate particular allegations with particular claims contained in the CSRASC, as the Court instructed.

"Because the purpose of Rule 8 is to ensure that the courts and adverse parties can understand a claim and frame a response to it, dismissal of a complaint for noncompliance with Rule 8 is usually reserved for cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *ReSource N.E. of Long Island, Inc. v. Town of Babylon,*

80 F.Supp.2d 52, 57 (E.D.N.Y.2000) (citations & quotations omitted). As was the case in *ReSource,* the CSRASC is not so opaque as to defy understanding: the causes of action are sufficiently delineated, and describe the alleged unlawful acts and the defendants responsible for them with enough particularity that those defendants can formulate a response to them. At this late stage in the proceedings, the Court finds the CSRASC to be adequate in this regard, and denies the defendants' motion on these grounds.

#### 2. *Failure to Comply with Rule 9(b)*

The defendants contend that, although it does not use the word "fraud," the CSRASC is grounded in fraud. Therefore, pursuant to Rule 9(b) and the Reform Act, the class must plead its case with a high degree of meticulousness. *Yourish v. California Amplifier,* 191 F.3d 983, 993 (9th Cir.1999) (noting applicability of Rule 9(b) to securities fraud claims); *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970 (9th Cir.1999) (describing heightened pleading standard of the PSLRA). Rule 9(b) mandates that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The PSLRA modifies Rule 9(b), providing that a securities fraud plaintiff shall identify: (1) each statement alleged to have been misleading; (2) the reason or reasons why the statement is misleading; and (3) all facts on which that belief is formed. *In re Silicon Graphics,* 183 F.3d at 996; 15 U.S.C. § 78u–4(b)(1).[1]

#### a. *The CSRASC Alleges Fraudulent Conduct*

The failure of a plaintiff to expressly plead fraud does not prevent a court

---

1. "In any private action arising under this [title] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this [title] state

from finding that a complaint is grounded in fraud. *See, e.g., Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 n. 5 (9th Cir. 2000) ("[T]he district court rejected as 'disingenuous' Desaigoudar's claim that the complaint also sounds in negligence. . . . After carefully reviewing the complaint's language, which asserts 'knowing and intentional' misconduct by the Appellees, we conclude that the rejection was proper.").

The CSRASC contains allegations that evidence conscious and intentional conduct, as opposed to negligent conduct. For example, the CSRASC alleges: "[t]he REIT Transaction was accomplished by a *well-orchestrated scheme* concocted and executed by [the defendants]" (CSRASC ¶ 1); "the Casden Defendants *purposely intended to mislead* the Limited Partners" (*id.* ¶ 51); "[t]he Solicitation Statements *concealed* the existence of these and other rights" (*id.* ¶ 55); "[t]he Casden Defendants *fabricated the notion* that reserve accounts had little or no value to the REIT" (*id.* ¶ 77c); "[b]ut *calculatedly*, the Solicitation Statements omitted disclosures" and the Casden Defendants "violated and converted to their own benefit important protections" (*id.* ¶¶ 89–90); "[t]hese retention agreements . . . were *knowingly not enforced* by the Casden Defendants because of their own self-interest" (*id.* ¶ 94); "the Casden Defendants *calculatedly lulled the Class* into believing" (*id.* ¶ 99b); "Alan Casden's receipt of these significant benefits by virtue of the REIT Transaction materialized only because the Class was *misled into approving* the REIT transaction by the Casden Defendants' false and misleading statements and breaches of fiduciary duties" (*id.*

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

¶ 100b); and "[d]efendants' *deception was not limited to converting to their own use* and for the benefit of their REIT the reserves" (*id.* ¶ 101).

■ The plaintiffs contend that the *Silicon Graphics* standard is inapplicable because it addresses the required state of mind for a Rule 10b–5 claim. In general, scienter is not required to prove a violation of Rule 14a–9's prohibitions against material misstatements and omissions in connection with a proxy solicitation. A showing of negligent conduct will suffice. *See, e.g., In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1248, 1267 (N.D.Cal. 2000).

■ However, the defendants are correct that the requirement that fraud claims be pleaded with particularity applies not only to Rule 10b–5 claims, but may also apply to any other securities claim sounding in fraud. T. Hazen, *The Law of Securities Regulation* § 12.13 at 545–46 (4th Ed.2002); *see also Neubronner v. Milken*, 6 F.3d 666 (9th Cir.1993) (contemporaneous trading requirement of section 20A's remedy for insider trading is an incident of fraud and must be pleaded with particularity).

Other courts have recognized that, in certain cases, Section 14(a) of the Securities and Exchange Act of 1934 allegations must comply with Rule 9(b), which requires particularized allegations of fraud, because the Section 14(a) is grounded in fraud. *See e.g., In re McKesson HBOC*, 126 F.Supp.2d at 1266 (finding § 14(a) claim to be sufficiently particular under Rule 9(b)).

b. *The CSRASC Is Sufficient*

■ The defendants contend that the CSRASC fails to allege evidentiary facts

15 U.S.C. § 78u–4(b)(2).

demonstrating that the defendants knew that the statements contained in the Consent Solicitations were false, or that the statements were made to defraud the plaintiffs, and therefore have failed to carry their burden under the heightened pleading requirements.[2]

In *McKesson*, the court found that the complaint was adequately particular as to the § 14(a) claim because "specific financial statements contained in the proxy are identified, their falsity is detailed, and the respective roles of the defendants in generating those financial statements are detailed." 126 F.Supp.2d at 1266. In this case, the CSRASC identifies in detail which specific statements in the Solicitations are allegedly false and why. The CSRASC does not specifically allege what respective roles the Individual Defendants played in preparing the Solicitations.

The *McKesson* court also found that:

> Requiring that a non-fraud claim be stated with particularity under Rule 9(b) does not import a scienter requirement into the pleadings; it simply requires factual specificity regarding the "neutral circumstances" of the alleged misstatement (the "who, what, where, when, and how") and the reasons why the misstatements were in fact false.

*Id.*

In this case, the CSRASC provides sufficient factual specificity regarding the circumstances of the alleged misstatements. The CRSASC sets forth each statement that was misleading and the reasons why it was misleading.

To the extent that the CSRASC is grounded in fraud, the CSRASC contains sufficiently detailed allegations providing evidence of scienter. The following allegations are sufficiently particular: the defendants knew that the Solicitations contained misstatements about overstated actual Local GP Buyout Costs (CSRASC ¶¶ 131–134); the defendants utilized outdated and inflated mortgage balances (*id.* ¶ 123); and the defendants omitted the magnitude and overcharged the class for the Soft Notes (*id.* ¶¶ 124–130).

The ¶ 14(a) claim is therefore sufficiently particular under Rule 9(b).

### c. *False and Misleading Statements of Opinion*

■ In *Virginia Bankshares, Inc. v. Sandberg*, the Supreme Court held that in order to be material for purposes of a § 14(a) claim, a statement of opinion must be both objectively and subjectively false. 501 U.S. 1083, 1096, 111 S.Ct. 2749, 115 L.Ed.2d 929 (1991) (finding "disbelief or undisclosed motivation, standing alone, insufficient to satisfy the element of fact that must be established under § 14(a)").[3]

■ Where a statement of opinion is claimed to be false, the speaker's "state of mind" is implicated, and the plaintiff is

---

2. The defendants also argue that the CSRASC improperly relies on conclusory allegations of "motive and opportunity" as the basis for inferring fraudulent conduct. *Silicon Graphics*, 183 F.3d at 974 (motive and opportunity cannot be basis for satisfying strictures of Fed.R.Civ.P. 9(b) and the Reform Act). The fact that the defendants allegedly had an economic motive for proposing the REIT transaction (to benefit the defendants), it is argued, is insufficient. Further, the "economic motive"

for the REIT transaction was disclosed in the Solicitations.

3. In his concurrence, Justice Scalia stated that he interpreted the Court's opinion as holding that: the statement " 'In the opinion of the Directors, this is a high value for the shares' would produce liability if in fact it was not a high value and the directors knew that. It would not produce liability if in fact it was not a high value but the directors honestly believed otherwise." *Id.* at 1108–09.

required to plead the evidentiary facts showing the speaker knew the opinion to be false. *In re McKesson,* 126 F.Supp.2d at 1265 ("While material statements of fact are false if they are contradicted by true facts, material statements of opinion are false only if the opinion was not sincerely held.").

The CSRASC challenges a number of statements of opinion contained in the Solicitations (for example, the existence of alternatives to the proposed sale and the projected effects of the MAHRAA legislation). The CSRASC alleges, for example, that: "[t]he Solicitation Statements presented a materially unbalanced and pessimistic perspective of the range of possible future events for the portfolio of Local Partnerships included in the REIT Transaction.... Despite the dire predictions presented in the Solicitation Statements, the Casden Defendants were fully aware that many, if not most, of the Properties ... would not experience the negative economic impact ..." (CSRASC ¶¶ 141–42.) The CSRASC challenges the subjective truthfulness of these statements of opinion by alleging that the Managing General Partner did not really believe what it said it believed.[4] The defendants contend that

the CSRASC fails to plead the facts upon which these allegations of subjective falsity are based.

The CSRASC pleads with requisite particularity that "statements of opinion" by the defendants were subjectively and objectively false. The Court finds that the plaintiffs have adequately pleaded the specific facts upon which their allegations of subjective falsity are based.

### d. *False and Misleading Statements of Fact*

As noted above, the CSRASC is also sufficient because it alleges sufficient facts to support the claims that the Solicitations contained false and misleading statements of material fact.[5]

### 3. *Group Pleading*

▮ The defendants argue that the CSRASC should be dismissed against the Individual Defendants because it improperly relies on the group pleading doctrine. In large and complicated securities fraud actions such as this, courts must be especially attentive to a plaintiff's "dragnet" tactic of indiscriminately grouping all of the individual defendants into one wrong-

---

4. For example, the CSRASC attacks the following statements of opinion in the Solicitations: "The Managing General Partner believes that now may be an opportune time for the Partnership to sell the Real Estate Interests, given current conditions in the real estate and capital markets" (REAL I at NAPICO 20785); and "The Managing General Partner does not believe that it would be feasible to market the properties to a third party ..." (*Id.*)

5. The plaintiffs allege that the Solicitations made misleading and false representations about Transaction Costs, GP Buyout Costs, Mortgages, Related Party Indebtedness and other liabilities used to calculate Purchase Price and Net Distributable Proceeds. (CSRASC ¶¶ 122–140.) It is also alleged that the Solicitations made false and misleading

statements about the interests that the REIT was acquiring from the REAL partnerships by misleading the Class to believe that the value of the REAL interests transferred in the REIT transaction was limited to the value of the real estate. (*Id.* ¶¶ 51–52, 67–74.) The CSRASC also alleges that the Casden defendants made material misrepresentations with respect to the existence and materiality of "other assets," and misrepresented that the "other assets" had no material value. (*Id.* ¶¶ 76–84.) Other alleged misstatements include: (1) failure to disclose that consent to REIT included the waiver of important rights; (2) use of a false and misleading valuation methodology; (3) conversion of local partnership cash; (4) false reasons for the REIT transaction; (5) "sweetheart" deals; and (6) tax implications of the sale.

doing monolith. *Lubin v. Sybedon Corp.*, 688 F.Supp. 1425, 1444 (S.D.Cal.1988).

In the Ninth Circuit, allegations of securities fraud based on claims of allegedly false and misleading statements in prospectuses, registration statements, annual reports, press releases, or other group-published information, may rely on a presumption that these statements are the collective work of those individuals within the company with direct involvement in the day-to-day affairs of the company. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). Under the group pleading presumption, plaintiffs may satisfy the specificity requirement of Rule 9(b) by pleading the alleged misrepresentations with particularity and indicating the roles of individual defendants in the alleged misrepresentations where possible. *Id.* *Wool's* presumption of collective action when there is misleading "group published information" is equally applicable to members of the board of directors in a corporate fraud action. *Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir.1988).

The defendants argue that, under the PSLRA, particularized facts are now required with respect to each defendant.[6] Even if group pleading can be reconciled with the PSLRA, it is argued, the plaintiffs must still prove the defendants' day-to-day control of the REAL partnerships and their participation in the allegedly false statements. The group published presumption "is grounded in reasonableness" and it is not reasonable to presume in every case that every officer joined in a scheme to defraud investors. *In re Glen-Fed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir.1995). Therefore, the CSRASC's conclusory allegations that every defendant participated in every misstatement or omission are insufficient as a matter of law and warrant dismissal against all the individual defendants.

To the extent that the CSRASC involves group pleading, the plaintiffs contend that it is permissible because the CSRASC involves allegations of false and misleading statements in group-published documents, which are the collective action of officers and inside directors. *Id.*

Here, there are four individual defendants and it is alleged that each was an officer, director and/or controlling stockholder of NAPICO, the Managing General Partner. As inside directors and officers of NAPICO, the plaintiffs argue that each Individual Defendant was responsible for proposing and structuring the REIT transaction. The CSRASC alleges that all wrongful acts were committed by the Managing General Partner and Casden Defendants "acting together and in concert with each other," and where the allegation is that an Individual Defendant acted individually, the "Individual Defendant so acting did so with the express or constructive knowledge, permission or agreement of and as the authorized agent for the other Individual Defendants." (CSRASC ¶ 22.)

In this case, where it is alleged that the "corporation's officers and directors are few in number and make corporate decisions on a group basis," it is appropriate to

---

6. The defendants argue that the group pleading doctrine, a judicially created exception to Rule 9(b), cannot be reconciled with the PSLRA, which requires particularized facts with regard to each defendant. There is a split of authority on this issue, and the Court need not reach the question at this time. *See, e.g., In re Secure Computing Corp. Sec. Litig.*, 120 F.Supp.2d 810 (N.D.Cal.2000) (discussing argument that the PSLRA abolished the group published information presumption, noting that no Ninth Circuit case has so held and concluding that the majority of the district courts in the Ninth Circuit that have addressed the issue have concluded that the group published information presumption survives the PSLRA).

attribute the statements in the Solicitations to the Individual Defendants. *See, e.g., In re Ashworth Sec. Litig.,* 2000 WL 33176041 *12, n. 3 (S.D.Cal.). Under the group pleading presumption, the Court finds that the allegations against the Individual Defendants are sufficiently specific under Rule 9(b).

### 4. Loss Causation

The Reform Act provides in relevant part that:

> In any private action arising under this [title], the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this title caused the loss for which the plaintiff seeks to recover damages.

15 U.S.C. § 78u–4(b)(4).

 The private plaintiff asserting claims for federal securities fraud must prove causation; namely, the causal connection between defendant's misrepresentation and plaintiff's injury. *Basic Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The causation requirement can be broken down into two necessary elements: actual cause, or transaction causation; and proximate cause, or loss causation. *Ambassador Hotel Co. v. Wei–Chuan Inv.,* 189 F.3d 1017, 1027 (9th Cir.1999).[7] To prove transaction causation, the plaintiff must show that, but for the fraud, the plaintiff would not have engaged in the transaction at issue. To prove loss causation, the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff. *Id.*

The defendants allege that CSRASC fails to plead loss causation because it does not link any alleged misrepresentations in the Solicitations to the plaintiffs' purported loss. The defendants contend that in a securities fraud case, the loss attributed to the alleged misrepresentation or omissions must effect the value of the plaintiffs' securities.

 In the Ninth Circuit, loss causation requires that "the misrepresentation touches upon the reasons for an investment's decline in value." *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1422 (9th Cir.1994) (internal quotation & citation omitted). The plaintiffs' securities are their limited partnership interests in the REAL Partnerships. The defendants argue that the plaintiffs have not submitted evidence showing that their securities were diminished in value after the REIT transaction.[8] Therefore, it is argued, there is no evidence before the Court of any diminution in the value of the REAL Partnership interests held by the REAL limited partners flowing from the defendants' alleged misrepresentations.

 The plaintiffs respond that the defendants' contentions as to "loss causation" improperly cite to Second Circuit cases in which claims were brought under § 10(b)

---

7. "Loss causation is plaintiff's ability to prove a connection to actual economic harm resulting from the transaction affected by the material misrepresentation." Hazen § 10.5 at 125. Transaction causation requires a showing that the misstatements and omissions were causally related to the occurrence of the transaction. *Id.*

8. The defendants have submitted evidence demonstrating that the plaintiffs' securities did not decline in value following the REIT transaction. The Ross Declaration offers the expert opinion of David Ross evaluating the plaintiffs' claim that the sale was detrimental to the limited partners of the REAL Partnerships and that they would have been better off if the transaction had not taken place. Ross concluded that the partnership transactions data does not support the plaintiffs' claim that they incurred damages as a result of the REIT transaction, or that the sale was detrimental to the interests of the limited partners. (Ross Decl. ¶¶ 5, 8.)

of the Exchange Act. Under § 14(a), the causation requirement is satisfied where the challenged proxy statement "was an essential link in the accomplishment of the transaction." *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) ("Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress if . . . he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction."). In *Mills*, a case involving a materially misleading proxy statement in connection with a merger, the Court held that "[w]here the defect in the proxy solicitation relates to the specific terms of the merger, the district court might appropriately order an accounting to ensure that the shareholders receive the value that was represented as coming to them." *Id.* at 388, 90 S.Ct. 616. The *Mills* Court emphasized that "damages should be recoverable only to the extent that they can be shown." *Id.* at 389, 90 S.Ct. 616.

■ Although, generally, a plaintiff's injury will be the diminution in the value of his or her investment (Hazen § 12.11 at 519), the plaintiffs contend that in this case they are not required to show a diminution in the value of their securities in order to show loss causation in a § 14(a) claim.[9] Another measure of damages (at least in the context of attacking a controlled merger) under Rule 14a–9 is what would have been a fair exchange upon full disclosure. *Mills*, 396 U.S. at 389, 90 S.Ct. 616. Essentially, in this case, the plaintiffs seek "benefit-of-the-bargain" damages, i.e. the

"value that was represented as coming to them." *Id.*

According to the Second Circuit:
[T]he benefit-of-the-bargain rule should be applied under the 1934 Act to the limited situation involved in this case, where misrepresentation is made in the tender offer and proxy solicitation materials as to the consideration to be forthcoming upon an intended merger. But, of course, giving the plaintiff benefit-of-the-bargain damages is appropriate only when they can be established with reasonable certainty. . . .

*Osofsky v. Zipf,* 645 F.2d 107, 114 (2d Cir.1981).

■ In *Goldkrantz v. Griffin,* the court noted that, in lieu of an out-of-pocket measure, benefit-of-the-bargain damages are available in the limited instance where a misrepresentation is made in the proxy solicitations as to the consideration to be forthcoming upon an intended merger. 1999 WL 191540, * 7. The court concluded that a claim for benefit-of-the-bargain damages must be based on the bargain that was actually struck, not on a bargain whose terms must be supplied by hypotheses about what the parties would have done if the circumstances surrounding their transaction had been different. *Id.* at *8. In *Goldkrantz,* the court also found that the plaintiff had not carried its burden to create a genuine issue of material fact as to loss causation because: (1) the plaintiff produced no evidence that the decrease in value of the stock at issue was attributable to the alleged misrepresentation (thus foreclosing damages under the standard out-of-pocket measure); and (2) the alleged misrepresentation concerned something other than the consideration for the merger (thus foreclosing benefit-of-the-bargain damages). Finally, the court

---

9. The standard measure of recovery under § 14(a) is out-of-pocket damages, defined as the difference between the price paid for the

security and its true value absent the fraud on the date of the transaction. *Goldkrantz v. Griffin,* 1999 WL 191540 (S.D.N.Y.).

found that plaintiff's argument regarding benefit-of-the-bargain damages was too speculative to support recovery because it depended upon a chain of events that never occurred.

In this case, the plaintiffs allege that the misrepresentations at issue concerned the consideration for their securities, i.e. that inadequate consideration was offered to the REAL limited partners based on certain misrepresentations and omissions. Therefore, the plaintiffs may proceed under the benefit-of-the-bargain theory. The plaintiffs have sufficiently alleged a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury or economic harm allegedly suffered by the plaintiffs.

### III. Conclusion

For the reasons stated above, the Court denies the defendants' motion for judgment on the pleadings.

IT IS SO ORDERED.