**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**Henry C. YUEN and Elsie M. Leung, Peter C. Boylan, Jonathan B. Orlick, and Craig M. Waggy, Defendants.**

**No. CV 03–4376MRP.**

United States District Court, C.D. California.

June 10, 2004.

Kelly Curtis Bowers, John B. Bulgozdy, Andrew J. Dunbar, Sandra J. Harris, Martin J. Murphy, Elizabeth Perry Smith, Thomas A. Zaccaro, Securities & Exchange Commission, Los Angeles, CA, for plaintiff.

Stanley S. Arkin, Paul R. Niehaus, Sean R. O'Brien, Michelle A. Rice, Arkin & Kaplan, New York City, Robert W. Brownlie, Susan D. Resley, Gray, Cary, Ware & Freidenrich, San Diego, CA, Lisa A. Callif, Dylan Ford, Richard Marmaro, Jonathan E. Rich, Proskauer Rose, Los Angeles, CA, John F. Cove, Jr., Kieran Paul Ringgenberg, David W. Shapiro, Boies, Sciller and Flexner, Oakland, CA, Patricia L. Glaser, Mark G. Krum, Mark Patricia Lynch, Christensen, Miller, Filler, Jacobs, Glaser, Weil & Shapiro, Frederick A.

Haist, David C. Wheeler, Augustini & Wheeler, Los Angeles, CA, for defendants.

Kimberly S. Greer, Sean T. Prosser, Fish & Richardson, San Diego, CA, for Third-Party Defendant.

Andrew R. Shoemaker, Hogan and Hartson, Boulder, CO, Richard L. Stone, Hogan and Hartson, Los Angeles, CA, for movant.

## MEMORANDUM OF DECISION RE:
### Defendants' Motion to Dismiss Second Amended Complaint

PFAELZER, District Judge.

Defendants Jonathan B. Orlick ("Orlick") and Craig M. Waggy ("Waggy") each filed separate Motions to Dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6) and Rule 9(b). *See* Notice of Motion and Motion of Defendant Jonathan B. Orlick to Dismiss Second Amended Complaint ("Orlick Motion")(filed Mar. 19, 2004); Notice of Motion and Motion of Defendant Craig M. Waggy to Dismiss Second Amended Complaint ("Waggy Motion")(filed Mar. 22, 2004). Defendant Peter C. Boylan ("Boylan") filed a Motion to Strike Certain Paragraphs of the Second Amended Complaint pursuant to FRCP Rule 8 and Rule 12(f). *See* Defendant Peter C. Boylan's Notice of Motion and Motion to Strike Certain Paragraphs of the Second Amended Complaint ("Boylan's Motion to Strike") (filed Mar. 19, 2004). Boylan subsequently joined in the Motions to Dismiss filed by Waggy and Orlick. *See* Notice of Motion and Motion for Joinder in Motion to Dismiss Second Amended Complaint by Craig M. Waggy (filed April 30, 2004); Notice of Motion and Motion for Joinder in Motion to Dismiss Second Amended Complaint by Jonathan B. Orlick (filed April 30, 2004). On June 2, 2004, the Court issued an Order GRANTING Defendants' Motions to Dismiss the Second Amended Complaint without prejudice, with leave of 20 days to amend. *See* Order (issued June 2, 2004). In light of this Court's ruling on all three Defendants' Motions to Dismiss, Boylan's Motion to Strike is superfluous and therefore DENIED. This Memorandum of Decision further amplifies the Court's June 2 Order.

## BACKGROUND

This dispute is based upon alleged overstatements of revenue by Gemstar–T.V. Guide International, Inc. ("Gemstar") in the period beginning in 1999 and continuing through the third quarter of 2002 ("the relevant time period"). Second Amended Complaint (SAC) ¶ 3. In this case, the SEC brings several claims against Defendants Henry C. Yuen ("Yuen"), Elsie M. Leung ("Leung"), Orlick, Waggy and Boylan, alleging that their conduct caused Gemstar to fraudulently overstate at least $248 million of revenue, in connection with eleven transactions, during this period. *Id.* The SEC's Second Amended Complaint outlines a variety of mechanisms that Gemstar, with participation by Yuen and Leung and the other Defendants, used to inflate its reported revenue.

Specifically, the SEC alleges that during the relevant time period, Gemstar (1) improperly recorded and reported $113.5 million of revenue from Scientific–America under an expired Settlement Agreement (SAC ¶¶ 25–36); (2) improperly reported $19.2 million in revenue over five quarters from upfront payments on an eight-year agreement with AOL (SAC ¶¶ 37–44); (3) improperly recognized $1.3 million in revenue from *T.V. Guide* Awards Show advertising (SAC ¶¶ 45–55); (4) improperly recorded $20 million in Interactive Program Guides ("IPG") advertising from an agreement with Fantasy Sports Properties, Inc. ("Fantasy Sports") (SAC ¶¶ 56–65); (5) improperly recognized $17.5 million as licensing revenue from a settlement with Motorola due to Defendants' failure to publicly disclose that part of the settlement was designated for prepaid advertising (SAC ¶¶ 66–82); (6) improperly recognized $26 million in IPG advertising revenue, which instead should have been allocated to the sale of the WGN distribution and interest income (SAC ¶¶ 83–96); (7) improperly reported approximately $8.7 million in advertising revenue earned from an agreement with Thompson, S.A., a French corporation that manufactures consumer electronics, which licensed various technologies from Gemstar (SAC ¶¶ 97–105); (8) improperly diverted $5.6 million in revenue from its media and licensing sectors to its IP sector (SAC ¶¶ 106–109); (9) improperly recorded and reported approximately $13.1 million in IP sector revenue for IPG advertising from Thompson (SAC ¶¶ 110–120); (10) improperly reported $18.1 million in licensing revenue from Time Warner Cable (SAC ¶¶ 110–132); and (11) improperly recorded and reported $1.4 million of IP sector revenue from the Barter transaction reflected in Gemstar's agreement with NASCAR (SAC ¶¶ 133–139).

## PROCEDURAL HISTORY

The SEC filed its Complaint against Defendants Yuen and Leung in June 2003. *See* Complaint (filed June 19, 2003). That pleading contained allegations regarding seven transactions relating to Gemstar's licensing of the Interactive Program Guide ("IPG") and sale of advertising on the IPG. In September 2003, the SEC filed its First Amended Complaint adding allegations regarding additional transactions involving Gemstar's periodic reports, press releases and analysts conference calls. *See* First Amended Complaint (filed September 30, 2003). It was not until January 2004 that the SEC again amended its Complaint to add the three Defendants who bring the Motions at issue: Orlick, Waggy, and Boylan. *See* SAC (filed Jan. 5, 2004) (describing a "complex scheme carried out over a long period of time by the defendants, some of whom had different involvement at different times").

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss pursuant to FRCP 12(b)(6) should be granted where the Complaint fails to state a claim upon which relief can be granted. Dismissal is warranted where there is a "lack of a cognizable legal theory" or where there is an "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988); *Navarro v. Block,* 250 F.3d 729 (9th Cir.2001). "To dismiss, it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Wool v. Tandem Computers, Inc.,*

818 F.2d 1433 (9th Cir.1987) (internal quotations omitted).

In evaluating a 12(b)(6) motion, the Court should consider "whether the total of plaintiffs' allegations, even though individually lacking, are sufficient" and not merely whether each individual allegation is sufficient. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir.2002); *In re Lockheed Martin Corp. Sec. Litig. (Lockheed Martin I)*, 272 F.Supp.2d 944 (C.D.Cal.2003). In doing so, the Court must accept well-pleaded allegations as true, but it is not required to accept "legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994); *Sebastian Int'l, Inc. v. Russolillo*, 186 F.Supp.2d 1055, 1063 (C.D.Cal.2000).

## ANALYSIS

The SEC claims that the Defendants engaged in a "fraudulent scheme" to overstate Gemstar's revenues, particularly revenues in the "highly touted" licensing and IP sectors. SAC ¶ 6; Opposition to Orlick Motion to Dismiss (filed April 16, 2004) (explaining that "[a]ny analysis of the allegations in the SAC must be done in the context of the overall fraudulent scheme by the defendants to inflate Gemstar's revenues in its Licensing and IP Sectors").

The SEC gives the majority of the credit for this "scheme" to Yuen and Leung. SAC ¶ 6 (explaining that "Yuen and Leung manipulated Gemstar's financial results in four ways" while the remaining Defendants' participation was limited to "different parts of the scheme"). Orlick, Waggy, and Boylan appear throughout the SAC in a somewhat random manner, popping up wherever the SEC can place them without being too obviously haphazard.

## I. Pleading Fraud with Particularity Pursuant to Rule 9(b)

■■■ At the core of the Defendants' Motions to Dismiss is the notion that the allega-

tions of fraud asserted in the SAC are not pled with the requisite degree of particularity and specificity. *See* FRCP 9(b). Rule 9(b) applies to claims alleging fraud and states, in pertinent part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." [1] FRCP 9(b). Rule 9(b) applies to fraud actions brought under the federal securities laws; in a securities action, a pleading will be "sufficient under Rule 9(b) if it identifies the circumstances of the alleged fraud so that the defendant can prepare an adequate answer." *Fecht v. Price Co.*, 70 F.3d 1078, 1082 (9th Cir.1995) (quoting *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994)). This notice requirement will be satisfied if the complaint "states precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." *In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1228 (N.D.Cal.1994); *see also Fecht*, 70 F.3d at 1082. In addition, when a fraudulent statement is alleged, the " 'plaintiff must set forth what is false and misleading about the statement, and why it is false.' " *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir.1994)(en banc)).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") significantly altered the pleading requirements in private securities fraud litigation. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084–85 (9th Cir. 2002) (requiring that a Complaint plead both falsity and scienter with particularity). The heightened pleading standards imposed by the PSLRA have been interpreted to apply only to private securities class actions, and not actions brought by the SEC. *See SEC v. ICN Pharmaceuticals, Inc.*, 84 F.Supp.2d 1097, 1099 (C.D.Cal.2000) ("The more rigorous pleading requirements under the PSLRA, which go beyond the Rule 9(b) requirements only apply to private actions; they do not apply to a case, such as this brought by the SEC.").

---

1. "Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." FRCP 9(b).

## II. Group Published Information Doctrine

 The SEC necessarily relies upon the "group published information" doctrine to state its claims against Orlick, Waggy, and Boylan. *See* Opposition to Orlick's Motion to Dismiss (filed April 16, 2004), at 8–12; Opposition to Waggy's Motion to Dismiss (filed April 16, 2004), at 9–12; Opposition to Boylan's Motion to Strike (filed April 16, 2004), at 10–12. The group published information doctrine provides:

> In cases of corporate fraud where the false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other "group-published information," it is reasonable to presume that these are collective actions of the officers. Under such circumstances, a plaintiff fulfills the particularity requirement of Rule 9(b) by pleading the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations.

*In re GlenFed, Inc., Sec. Litig.,* 60 F.3d 591, 593 (9th Cir.1995). Under this doctrine, the presumption of liability applies to all high ranking officers who have involvement not only in the day-to-day affairs of the corporation, but also in the corporation's financial statements. *Id; see also In re Silicon Graphics Sec. Litig.,* 970 F.Supp. 746, 759 (N.D.Cal.1997) ("Under the group pleading doctrine, in drafting a complaint, plaintiffs may rely on a presumption that statements in "prospectuses, registration statements, annual reports, press releases, or other 'group-published information,'" are the collective work of those individuals with direct involvement in the day-to-day affairs of the company.").

The group published information doctrine appears to be in direct opposition to the pleading requirements of Rule 9(b). *See* FRCP 9(b). Consequently, some courts have found there to be an irreconcilable degree of tension between the group published information doctrine and Rule 9(b) and have re-

fused to apply or even recognize this court-constructed doctrine. *See D.E. & J. Limited Partnership v. Conaway,* 284 F.Supp.2d 719, 730 n. 11 (E.D.Mich.2003) (noting that prior to the passage of the PSLRA, only three circuits, including the First, Ninth, and Tenth, specifically recognized a "group pleading" exception to the pleading with particularity requirements of FRCP 9(b)).

Much of the recent debate surrounding the viability of the group published information doctrine focuses on the doctrine's continued existence after the enactment of the PSLRA. The SEC emphasizes, and this Court recognizes, that actions brought by the SEC are not subject to the PSLRA. *SEC v. ICN Pharmaceuticals, Inc.,* 84 F.Supp.2d at 1099. Thus, given the inapplicability of the PSLRA to the present action, the SEC hastily concludes that the wavering case law surrounding the viability of the group published information doctrine post-PSLRA does not have any bearing on the present case. The SEC, therefore, asserts that the allegations in the SAC are properly pled according to the requirements of the group published information doctrine.

Nonetheless, it is the disfavored nature of the group published information doctrine, rather than its applicability post-PSLRA, that is of immediate concern to this Court. Given the lack of case law available to offer guidance on how the group published information doctrine applies to plaintiffs who are not subject to the PSLRA (i.e. actions brought by the SEC), this Court finds the post-PSLRA case law instructive.[2]

The Ninth Circuit has arguably recognized the continued existence of the doctrine after the enactment of the PSLRA, albeit reluctantly. *See Howard v. Everex Systems, Inc.,* 228 F.3d 1057, 1065–66 (9th Cir.2000) (upholding group pleading when the defendant is a "controlling person"); *In re Homestore.com, Inc. Sec. Litig.,* 252 F.Supp.2d 1018, 1031 (C.D.Cal.2003) ("Since the enactment of the PSLRA, district courts in this circuit have struggled with the doctrine's continued viability in light of the PSLRA's

2. Interestingly, the SEC cites no precedent for the application of the group published information doctrine in cases where the SEC is the plaintiff; this Court's independent research did not reveal any such case law.

stringent pleading requirement regarding scienter."); *In re Real Estate Associates Limited Partnership Litig.*, 223 F.Supp.2d 1142, 1149–50 (C.D.Cal.2002) (recognizing the continued validity of the group published doctrine, but warning that "in large and complicated securities fraud actions such as this, courts must be especially attentive to a plaintiff's 'dragnet' tactic of indiscriminately grouping all of the individual defendants into one wrongdoing monolith") (internal citations omitted); *In re Lockheed Martin*, 272 F.Supp.2d 928, 936 (C.D.Cal.2002) (recognizing the group published information doctrine but finding it "inconsistent with the PSLRA because it requires courts to accept a plaintiff's belief regarding the individual liability of a corporate officer even when the belief is based on the officer's job title alone" and describing it as "essentially a mechanism for pleading an officer's involvement in the issuance of a corporate statement based on information and belief"); *In re Secure Computing Corp. Sec. Litig.*, 120 F.Supp.2d 810 (N.D.Cal.2000) (discussing the argument that the PSLRA abolished the group published information presumption, noting that no Ninth Circuit case has so held and concluding that the majority of the district courts in the Ninth Circuit that have addressed the issue have concluded that the group published information presumption survives the PSLRA); *In re Silicon Graphics Sec. Litig.*, 970 F.Supp. 746, 759 (N.D.Cal.1997) (recognizing the group pleading doctrine) (citing *GlenFed*, 60 F.3d at 593 and *Wool*, 818 F.2d at 1440).

Several district courts, however, have found the group pleading presumption of the group published information doctrine no longer viable. *See D.E. & J. Limited Partnership v. Conaway*, 284 F.Supp.2d at 730 (holding that group pleading is "clearly inconsistent with [FRCP] 9(b)'s express requirements of specificity" and that the PSLRA "codifies a ban against group pleading"); *In re First Union Corp. Sec. Litig.*, 128 F.Supp.2d 871, 888 (W.D.N.C.2001) ("Group pleading is clearly inconsistent with *Rule 9(b)*'s express requirements of specificity.") (emphasis in original); *Collmer v. U.S. Liquids, Inc.*, 268 F.Supp.2d 718 (S.D.Tex. 2003) (holding that the group pleading doctrine is at odds with the PSLRA and has not survived the amendments); *Allison v. Brooktree Corp.*, 999 F.Supp. 1342, 1350 (S.D.Cal. 1998) (explaining that the "judicial presumption" of group pleading could not "be reconciled with the statutory mandate that plaintiffs must plead specific facts as to each act or omission by the defendant"); *Coates v. Heartland Wireless Communications, Inc.*, 26 F.Supp.2d 910, 916 (N.D.Tex.1998) (explaining that group pleading is inconsistent with the stringent pleading requirements of the PSLRA as well as contrary to its underlying policy of protecting defendants from unwarranted claims and strike suits). *But see In re Oxford Health Plans, Inc.*, 187 F.R.D. 133, 142 (S.D.N.Y.1999) (holding that "the PSLRA has not altered the group pleading doctrine"); *In re Miller Industries, Inc. Sec. Litig.*, 12 F.Supp.2d 1323, 1329 (N.D.Ga. 1998) (same); *In re Stratosphere Corp. Sec. Litig.*, 1 F.Supp.2d 1096, 1108 (D.Nev.1998) (same); *In re BankAmerica Corp. Sec. Litig.*, 78 F.Supp.2d 976, 988 (E.D.Mo.1999) (finding that the group pleading doctrine "has nothing to do with scienter" and only has limited application, and thus "is not inconsistent" with the PSLRA).

■ To state its claims against Waggy, Orlick and Boylan, the SEC places great weight on this doctrine, and its applicability to the present case. In so doing, the SEC seeks to get around the stringent pleading requirements of 9(b). The SEC makes general and conclusory allegations against the Defendants and asserts that the Defendants' acts are a part of some ill-defined "scheme." Even though the PSLRA's heightened pleading requirements do not apply to actions brought by the SEC, this Court will not allow the SEC to abuse the group pleading doctrine by asserting non-specific claims.

After reading the papers, this Court finds that the SEC devised their theory of a "complex fraudulent scheme" as a means to get around the pleading requirements for the individual Defendants. As discussed previously in this Court's Order GRANTING Defendants' Motions to Dismiss (June 2, 2004), the SEC has not plead any specifics as to the individual Defendants' alleged participation in the scheme such as who devised the

scheme, when it was devised and when each Defendant joined it. In *In re Lockheed Martin,* this Court recognized that "[g]roup pleading arguably allows plaintiffs to name, as defendants, people who cannot be tied by specific facts to allegedly false or misleading statements *without discovery.*" *See In re Lockheed Martin Corp. Secs. Litig.,* 272 F.Supp.2d 928, 935 (C.D.Cal.2002)(emphasis added). The *Lockheed Martin* Court implies that it is only appropriate to use the group published information doctrine in instances where no discovery has yet been conducted. *See id.* Had the SEC not been engaged in discovery for several months before asserting claims against the Defendants, then perhaps the SEC's reliance upon the group published information doctrine would not be so objectionable. However, given the SEC's substantial pre-filing investigatory powers and the significant discovery already conducted in this case, the SEC's reliance upon the "group published information" doctrine is misplaced and inappropriate.

In addition, even if this doctrine were applicable, it is important to note that "the group published information presumption is grounded in reasonableness—and it is not reasonable to presume in every case, given the requirement of notice, that a corporate scheme to defraud was collectively devised by the [ ] director defendants." *In re Glen-Fed,* 60 F.3d at 593 (internal quotations omitted); *see also In re Real Estate Associates Limited Partnership Litig.,* 223 F.Supp.2d at 1150; *In re Metawave Communications Corp. Sec. Litig.,* 298 F.Supp.2d 1056, 1087 (W.D.Wash.2003) (rejecting application of "group pleading" doctrine based solely on conclusory allegations of job title, direct participation in day-to-day activities and participation in preparation of public statements); *In re MDC Holdings Sec. Litig.,* 754 F.Supp. 785, 795-06 (S.D.Cal.1990) (explaining that "plaintiffs must give some detail demonstrating collective responsibility before they are entitled to benefit from the *Wool* presumption").

In considering the "reasonableness" of the presumption in the present action, the Court considers the day-to-day involvement of the three defendants with the corporate entity, as well as their involvement with the financial affairs of the corporation. While the SEC alleges that Orlick, Waggy, and Boylan are liable for fraudulent *disclosure* of Gemstar's financial results (SAC ¶ 6, 9), the SEC specifically does *not* allege that Orlick, Waggy, or Boylan engaged in the act of manipulating Gemstar's financial results. SAC ¶ 6. Further, the SEC bases its application of the group pleading presumption solely upon conclusory allegations of job title, purported general involvement with the day-to-day activities, and alleged participation in disclosure of public statements. This Court finds such reliance upon the group published information doctrine to be unreasonable.

## CONCLUSION

For the foregoing reasons, this Court has heretofore GRANTED Defendants' Motions to Dismiss the Second Amended Complaint without prejudice, with leave of 20 days (from the date of this Court's Order issued June 2, 2004) to amend.

IT IS SO ORDERED